IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KATHLEEN KRAMEDAS MCGUINESS, CHRISTIE R. GROSS, and MY CAMPAIGN GROUP, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 23-894-MN |
| KATHLEEN JENNINGS, MARK DENNEY, ALEXANDER MACKLER, and FRANK ROBINSON, | ) ) ) ) | |
| Defendants. | ) | |

## <u>**MEMORANDUM OPINION**</u>

Ronald G. Poliquin, THE POLIQUIN FIRM, LLC, Wilmington, DE – attorney for Plaintiffs

Nicholas D. Picollelli, Jr., Deputy Attorney General, Kenneth L. Wan, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – attorneys for Defendants

February 6, 2025
Wilmington, Delaware



NOREIKA, U.S. DISTRICT JUDGE:

Presently before the Court is Defendants' partial motion to dismiss (D.I. 13) the Second Amended Complaint (D.I. 5) for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Specifically, Defendants Kathleen Jennings ("Jennings"), Mark Denney ("Denney"), Alexander Mackler ("Mackler") and Frank Robinson ("Robinson") (collectively, "Defendants") assert that Plaintiffs Kathleen Kramedas McGuiness ("McGuiness"), Christie R. Gross ("Gross") and My Campaign Group, LLC ("MYCG") (collectively, "Plaintiffs") fail to state a claim for relief under 42 U.S.C. § 1983 and under Delaware tort law. For the reasons set forth below, the Court GRANTS Defendants' partial motion to dismiss.

## I.    **BACKGROUND**

Plaintiffs' allegations, accepted as true at this stage of the proceedings, are as follows.

McGuiness served as the Delaware State Auditor from January 2019 until October 2022. (D.I. 5 ¶ 9). While serving in that position, McGuiness entered into contracts with Plaintiff MYCG, which is owned by Plaintiff Gross, for the provision of communication services and public policy work. (*Id.* ¶ 10). The Delaware Department of Justice opened an investigation into McGuiness for official misconduct, arising in part from her contracts with MYCG and Gross. The investigation involved various Delaware Department of Justice employees, including Delaware Attorney General Jennings, Deputy Attorney General Denney, Chief Deputy Attorney General Mackler and Chief Special Investigator Robinson.

---

[1]    Initially, Defendants moved to dismiss the Second Amended Complaint in its entirety. (*See* D.I. 13). Defendants, however, in their reply brief, withdrew a basis for dismissal. (D.I 19 at 6). As a result, Defendants' motion to dismiss (D.I. 13) is properly viewed as a partial motion to dismiss. (*See also* D.I. 19 at 14 (requesting dismissal "in part")).

On September 28, 2021, the Delaware Department of Justice sought, obtained and executed a search warrant ("the Search Warrant") at McGuiness's office. (*Id.* ¶ 16).  Among other items, the Search Warrant authorized the search and seizure of "[a]ll invoice and payment records for My Campaign Group and Innovate Consulting" as well as "[t]he office video system to cover June 15, 2021 to July 1, 2021." (D.I. 5, Ex. A at 2).  In support of the Search Warrant, Defendant Robinson submitted a probable cause affidavit ("the Probable Cause Affidavit").  The Probable Cause Affidavit, in paragraphs 23 and 24, alleged that McGuiness intentionally split invoices under the MYCG contract into multiple payments to avoid official oversight and approval.  (*Id.* ¶¶ 18-19; *see also* D.I. 14 at 8).  Additionally, paragraph 37 of the Probable Cause Affidavit alleged that an employee in the Auditor's officer "called the police to report an item stolen from within the office." (D.I. 5, Ex. A ¶ 37).

On October 11, 2021, a grand jury returned an indictment of McGuiness on five criminal charges relating to her conduct as State Auditor ("the Indictment").[2]  That same day, the Delaware Department of Justice held a press conference ("the Press Conference") to announce the Indictment.  Defendants Jennings and Mackler spoke at the press conference about the investigation and the Indictment.  (D.I. 5 ¶ 42).

After the Indictment, McGuiness filed a Motion to Suppress based on allegedly false statements made in the Probable Cause Affidavit.  (*Id.* ¶ 48). Accordingly, the Delaware Superior Court conducted a *Franks* hearing.  During the *Franks* hearing, "Defendant Robinson agreed that he included facts in the affidavit of probable cause supporting the search warrant that he knew or

---

[2]     The Indictment charged Plaintiff McGuiness with (1) Conflict of Interest; (2) Theft; (3) Non-Compliance with Procurement Law; (4) Official Misconduct; and (5) Act of Intimidation.  (D.I. 5, Ex. B).  Plaintiffs Gross and MYCG were not indicted.

should have known were false." (*Id.* ¶ 49). As a result, part of the seized electronically stored information was suppressed. (*Id.* ¶ 51; *see also* D.I. 17 at 12).

McGuiness trial was conducted in the Delaware Superior Court from June 14, 2022 to June 30, 2022. During trial, Robinson admitted, again, that certain assertions in paragraphs 23 and 24 of the Probable Cause Affidavit were false. (D.I. 5 ¶ 38). Plaintiffs also discovered that Defendants omitted certain exculpatory facts from paragraph 37 of the Probable Cause Affidavit. (*Id.* ¶¶ 33-34 (referring to D.I. 5, Ex. F)).

On July 1, 2022, the jury found Plaintiff McGuiness guilty of Conflict of Interest, Non-Compliance with Procurement Law and Official Misconduct. (D.I. 17 at 12); *see also State v. McGuiness*, 2022 WL 3971195, at *1, *4-7 (Del. Super. Aug. 30, 2022). Immediately following the jury's verdict, the trial judge reversed the conviction for Non-Compliance with Procurement Law. Then, following an appeal, the Delaware Supreme Court reversed the charge of Official Misconduct. (D.I. 17 at 12); *see also McGuiness v. State*, 312 A.3d 1156, 1201 (Del. 2024). McGuiness's sole remaining conviction is for Conflict of Interest.

## II.    THE INSTANT ACTION AND MOTION

Plaintiffs McGuiness, Gross and MYCG commenced the instant action in this Court on August 15, 2023.[3] On October 12, 2023, Plaintiffs filed their Second Amended Complaint (D.I. 5). The Second Amended Complaint alleges two causes of action against Defendants Jennings, Denney, Mackler and Robinson, in their individual capacities. Count I, asserted under 42 U.S.C. § 1983, alleges that Defendants Denney, Mackler and Robinson violated Plaintiff McGuiness's Fourth Amendment rights by filing a false probable cause affidavit in order to search the invoice

---

[3]    The Complaint (D.I. 1) was asserted against Defendants Jennings, Robinson, and Denney. Then, on September 28, 2023, Plaintiff McGuiness filed a First Amended Complaint (D.I. 3) through which Defendant Mackler was added.

payments and office video footage.  (D.I. 5 ¶¶ 80-96).  In other words, Count I is premised on two Fourth Amendment violations (*i.e.*, a search of the payments and a search of the video footage) stemming from an alleged *Franks* violation.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  Count II, asserted under Delaware's common law, alleges that Defendants slandered Plaintiffs at the Press Conference.[4]  (D.I. ¶¶ 97-119).

On February 5, 2024, Defendants filed a motion to dismiss Plaintiffs' Seconded Amended Complaint (D.I. 13) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In their Opening Brief (D.I. 14), Defendants argued dismissal was warranted for the following reasons: (1) Count I, as to the search of the invoice payments, was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) Count I, as to the search of the video footage, failed to properly state a *Franks* claim; (3) Count I should be dismissed in its entirety as to Defendants Denney and Mackler because they are entitled to absolute prosecutorial immunity; (4) Count II should be dismissed as to Defendants Mackler and Robinson because they did not make statements at the Press Conference; and (5) Count II should be dismissed as to Defendants Jennings and Denney because they are entitled to absolute immunity under Delaware's State Tort Claims Act and Delaware's Common Law.  (*See* D.I. 14).  Plaintiffs answered Defendants' motion to dismiss on April 5, 2024.  (D.I. 17).  Defendants then filed a reply on May 13, 2024.  (D.I. 19).  In their reply, Defendants formally withdrew their *Heck* challenge to Count I of the Second Amended Complaint but affirmed all other arguments.[5]  (D.I. 19 at 6).

---

[4]    Count II is titled "Slander *Per Se* Against Defendants."  (D.I. 5 at 25).  Although the allegations primarily focus on statements made by Defendants Jennings and Denney, the Second Amended Complaint does not explicitly state that Count II is being asserted solely against Defendants Jennings and Denney.  Therefore, the Court will read Count Two as it is written and construe it as applying to all Defendants.

[5]    In light of the withdrawal, the Court will not address Defendants' *Heck* argument.

For the reasons explained herein, the Court grants Defendants' motion to dismiss. As a result, the only count remaining is Count I, in part, asserted against Defendant Robinson.[6]

### III.  <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6), a complaint must be dismissed if it "[fails] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must "set forth enough factual allegations to 'state a claim for relief that is plausible on its face.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, the Court must construe all allegations and facts in the light most favorable to the non-movant plaintiff and resolve all reasonable inferences in the plaintiff's favor. *See Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005); *see also Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept "bald assertions," "unsupported conclusions" or "unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906, n.8 (3d Cir. 1997) (internal quotation marks omitted). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery

---

[6]     The remaining portion of Count I concerns the alleged misrepresentations in paragraphs 23 and 24 in the Probable Cause Affidavit, which allegedly provided the basis for an unconstitutional search of "[a]ll invoices and payment records for My Campaign Group and Innovate Consulting between January 1, 2019, and July 1, 2021." (D.I. 5 ¶ 92).

will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks and citations omitted).

## IV. <u>DISCUSSION</u>

Dismissal of Count I, in part, and Count II, in its entirety, is warranted for four reasons: (1) Count I fails to properly allege a *Franks* violation as it pertains to the video footage; (2) Defendants Denney and Mackler are entitled to absolute prosecutorial immunity for the actions alleged in Count I; (3) Count II fails to plausibly allege Defendants Mackler and Robinson committed slander; and (4) Defendants Jennings and Denney are entitled to absolute immunity under the Delaware State Tort Claims Act for the actions alleged in Count II.

### A. **Count I (Fourth Amendment Violation Against Defendants Denney, Mackler, and Robinson Under 42 U.S.C. § 1983) is Dismissed in Part.**

Count I alleges that Defendants Denney, Mackler and Robinson "knowingly filed a false affidavit to secure a search warrant" – also referred to as a *Franks* violation – in violation of Plaintiff McGuiness's Fourth Amendment rights. (D.I. 5 ¶ 90). Count I is asserted under 42 U.S.C. § 1983 ("Section 1983"), which provides a cause of action against "'any person' who under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). McGuiness alleges two deprivations of her Fourth Amendment rights: (1) a search of "[a]ll invoices and payment records for My Campaign Group and Innovate Consulting between January 1, 2019 and July, 1 2021" premised on paragraphs 23 and 24 of the Probable Cause Affidavit; and (2) a search of "[t]he office video system to cover June 15, 2021 to July 1, 2021" premised on paragraph 37 of the Probable Cause Affidavit. (D.I. 5 ¶ 92).

Defendants' first basis for dismissal concerns Plaintiff's second alleged deprivation – the search of the office video system. Specifically, Defendants argue that Plaintiff McGuiness fails to

properly plead a *Franks* violation under Section 1983.  Second, Defendants argue that Denney and Mackler are entitled to absolute prosecutorial immunity for all of the alleged deprivations in Count I.  The Court agrees with Defendants.

### 1.    Plaintiff Fails to State a *Franks* Claim as to the Seized Video Footage.

#### a.    Legal Standard

To successfully plead a Fourth Amendment *Franks* violation – the underlying basis for her Section 1983 action – Plaintiff McGuiness must allege "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the finding of probable cause." *Bridges v. Torres*, 809 Fed. Appx. 69, 71 (3d Cir. 2020) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).  To satisfy the second prong, the Court must reconstruct the probable cause affidavit to solve for the alleged deficiency.[7]  *See United States v. Yusuf*, 461 F.3d 374, 383-84 (3d Cir. 2006).  Where the probable cause affidavit allegedly contains a material omission, "the court must remove the falsehood created by [the] omission by supplying the omitted information to the original affidavit."  *Id.* at 384.

---

[7]    McGuiness argues that the Court's review is limited to the allegations in the Second Amended Complaint.  (D.I. 17 at 15).  The law, however, requires the Court to examine the alleged misstatement or omission in the context of the whole probable cause affidavit. *See Franks*, 438 U.S. at 164-65.  Further, McGuiness has attached the Search Warrant and Probable Cause Affidavit to the Second Amended Complaint.  And, the allegations in the Second Amended Complaint also heavily rely on and reference the Probable Cause Affidavit.  *See In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation marks omitted).  Therefore, McGuiness's argument is utterly devoid of merit.

b.    **Analysis**

McGuiness alleges that Defendants Denney, Mackler and Robinson "recklessly" made a material omission in paragraph 37 of the Probable Cause Affidavit, which provided a basis to search the office video footage.  (*See* D.I. 5 ¶ 89; *see also id.* ¶ 35).  Paragraph 37 of the Probable Cause Affidavit reads as follows:

> On or about June 25, 2021, an employee who is friends with former employees and whistleblowers to the misconduct at the Office of the Auditor of Accounts called the police to report an item stolen from within the office.

(D.I. 5, Ex. A ¶ 37).

McGuiness avers that paragraph 37 contains a material omission because Defendants Denney, Mackler and Robinson were aware that "the police officer who had investigated the theft had viewed the records of the video system and concluded that they did not depict the theft and that it was his opinion that the employee who reported the theft was [crazy]." (D.I. 5 ¶ 33; *see also id.* ¶ 88).  Nevertheless, McGuiness fails to plausibly establish that the omission from paragraph 37 was material or necessary to the finding of probable cause.

As explained above, the Court must correct paragraph 37 to include the information that the reporting employee was "crazy" and that a review of the office video footage did not depict the theft.  *See Yusuf*, 461 F.3d at 383-84.  Even with this correction, however, there is still "a fair probability that contraband or evidence of a crime [would] be found" on the video surveillance footage.  *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) (espousing the standard for probable cause).  In addition to Theft, Plaintiff McGuiness was being investigated for Official Misconduct and Act of Intimidation.  (D.I. 5, Ex. A at 2).  Paragraphs 34 through 36 of the Probable Cause Affidavit allege that McGuiness surveilled communications of potential whistleblowers, attempted to access her employee's email accounts,

and discriminated against employees who reported or questioned her alleged misconduct. (*Id.* ¶¶ 34-36). Based on these allegations, it is reasonable to assume that the office video footage would have captured any official misconduct or acts of intimidation. Additionally, Paragraph 38 alleges that McGuiness had "control over – and access to – the office's video surveillance system." (*Id.* ¶ 38). This allegation implies that McGuiness may have been editing or deleting footage to conceal her misconduct. "Given all the circumstances set forth in the affidavit," and notwithstanding the corrections to paragraph 37, there remains a "fair probability" that evidence of Official Misconduct or Act of Intimidation would have been found on the office's video footage. *See Gates*, 462 U.S. at 238. The Court, therefore, does not find that McGuiness plausibly alleges the statements or omissions in paragraph 37 were material or necessary to the finding of probable cause to search the office video footage. As a result, the Court dismisses Count I in part.

### 2.    Defendants Denney and Mackler are Entitled to Absolute Immunity.

Next, Defendants Denney, a former Delaware Deputy Attorney General,[8] and Mackler, the Delaware Chief Deputy Attorney General, seek dismissal of Count I on the basis that they are entitled to absolute prosecutorial immunity. In contrast, McGuiness argues that Denney and Mackler are not entitled to absolute prosecutorial immunity because they were "not acting in a prosecutorial function" when drafting the search warrant affidavit because their actions occurred "pre-indictment." (*See* D.I. 17 at 16-17). Ultimately, the Court agrees that Denney and Mackler are entitled to absolute prosecutorial immunity for the alleged drafting, co-authoring, and filing of the Probable Cause Affidavit.

---

[8]    Defendant Denney is not currently a Deputy Attorney General. All the allegations, however, concern Defendant Denney's conduct while he was acting as a Deputy Attorney General. (D.I. 5 ¶ 12).

a.    **Legal Standard**

Prosecutors are entitled to absolute immunity from liability under Section 1983 for engaging in "quasi-judicial" conduct. [9] *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). To qualify as "quasi-judicial," the actions of the prosecutor must be "intimately associated with the judicial phase of the criminal process." *Id.* at 430-31. Courts must functionally analyze each alleged activity of the prosecutor to determine whether the prosecutor's conduct was truly quasi-judicial. *See Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020). "Analysis of prosecutorial immunity questions thus has two basic steps, though they tend to overlap. The court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011). Where the prosecutor's actions did not serve a quasi-judicial function and absolute immunity is barred, the prosecutor will receive qualified immunity if his or her actions were "objectively reasonable" in light of the constitutional rights allegedly affected. *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992).

Defendants Denney and Mackler, as the officials seeking absolute immunity, bear the burden of showing that such immunity is justified for the function in question. *Burns v. Reed*, 500 U.S. 478, 486 (1991). And, at the motion to dismiss stage, Defendants "must show that the conduct triggering absolute immunity clearly appears on the face of the complaint." *Weimer v. County of Fayette*, 972 F.3d 177, 187 (3d Cir. 2020) (internal quotation marks omitted).

---

[9]    Absolute immunity is not awarded arbitrarily. "[T]he absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform [prosecutorial] functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." *Kalina v. Fletcher*, 522 U.S. 118, 127 (quoting *Malley v. Briggs*, 475 U.S. 335, 342 (1986)).

b.    **Analysis**

Plaintiff McGuiness alleges that Defendants Mackler and Denney "drafted," "co-[wrote],"
and "knowingly filed" a false affidavit to secure a search warrant.  (D.I. 5 ¶¶ 83, 84, 90; *see also
id.* ¶¶ 75, 76).  Neither the Supreme Court nor the Third Circuit have determined whether a
prosecutor receives absolute immunity (or qualified immunity) for this alleged function.
Consequently, the Court turns to the complicated, patchwork quilt of immunity jurisprudence.

The Supreme Court has determined that the following conduct is "quasi-judicial" and
warrants absolute prosecutorial immunity: initiating a prosecution and presenting a state's case,
*Imbler*, 424 U.S. at 431; appearing before a judge and presenting evidence in support of a motion
for a search warrant, *Burns*, 500 U.S. at 490; and preparing and filing charging documents such as
the information and motion for an arrest warrant, *Kalina* 522 U.S. 118, 129.  In contrast, the
Supreme Court has held that the following conduct is not "quasi-judicial:" providing legal advice
to police during a pretrial investigation of facts, *Burns*, 500 U.S. at 492-496; holding and making
statements at a press conference, *Buckley*, 509 U.S. at 276-278; and "personally attesting to the
truth of the averments in the certification" "under penalty of perjury," *Kalina*, 522 U.S. at 129.
The alleged actions of Defendants Denney and Mackler more closely resemble the actions found
to be quasi-judicial in the former line of cases, rather than the actions determined to be outside the
prosecutorial function in the latter line of cases.

For example, in *Kalina v. Fletcher*, the Supreme Court held a prosecutor's "activities in
connection with *the preparation and filing* of two of the three charging documents – *the
information and t*he *motion for an arrest warrant* – are protected by absolute immunity."  522 U.S.
at 129 (emphasis added).  Although in this case Defendants Denney and Mackler are alleged to
have prepared and filed the affidavit to secure the search warrant, which is not a "charging
document," the alleged function of "co-writing," "drafting" and "filing" is primarily quasi-judicial.

Of course, drafting a document for judicial review and filing that document in a tribunal is an act that is "intimately associated with the judicial phase of the criminal process." *Imbler* at 430-31. In fact, the judicial phase of the criminal process often begins with a request for a search warrant. Unlike investigative or administrative actions, the drafting and filing of a search warrant requires the prosecutor to exercise their legal judgment to determine which "particular facts to include in the certification to provide the evidentiary support for the finding of probable cause required." *Kalina*, at 130. Such action touches the court and the judicial process directly.

In accordance with this logic, and under circumstances almost identical to those in the present case, the Seventh Circuit in *Greenpoint Tactical Income Fund LLC v. Pettigrew* ("*Greenpoint*") recently held that an Assistant United States Attorney ("AUSA") was entitled to absolute immunity for assisting, directing, and preparing a search warrant affidavit. *Greenpoint*, 38 F.4th 555, 566 (7th Cir. 2022). The Seventh Circuit reasoned:

> In *Buckley*, the Supreme Court explained that a prosecutor's advocacy responsibilities include evaluating the evidence assembled by officers. 509 U.S. at 273. Plaintiffs' complaint here alleges that AUSA Halverson assisted Agent Pettigrew in preparing the search warrant affidavit. They also claim that Halverson "directed" Pettigrew in preparing the warrant affidavit, but they do not explain what supposed direction Halverson gave. These assertions do not suggest that AUSA Halverson was doing anything more than evaluating the evidence that Agent Pettigrew had gathered and presented to him. If that were sufficient to establish that a prosecutor was acting in an investigative capacity, then absolute immunity would disappear for seeking search warrants.

38 F.4th at 565.

Here, too, Plaintiff McGuiness's allegations focus on the false and misleading "evidence" that Defendants Denney and Mackler chose to include in the Probable Cause Affidavit. There are no allegations that Defendants Denney or Mackler did anything more than select certain facts. Defendants Denney and Mackler are neither alleged to have personally attested to the truth of the

averments in the certification, *see Kalina*, 522 U.S. at 129, nor to have fabricated the allegedly false evidence themselves, *see Buckley*, 509 U.S. at 275.  Accordingly, the Court finds that Defendants Denney and Mackler were acting squarely within their prosecutorial roles as advocates for the state.

The Court also must consider whether its extension of absolute immunity would "have an adverse effect upon the functioning of the criminal justice system." *Imbler v. Pachtman*, 424 U.S. 409, 426 (1976).  On one hand, a denial of absolute immunity in this case would strengthen Fourth Amendment protections by ensuring that prosecutors "double-check" all facts, allegations, and statements submitted to the tribunal.  On the other hand, a denial of absolute immunity may deter prosecutors from drafting and filing probable cause affidavits in order to obtain search warrants.[10] The Court finds the latter consequence untenable.  The criminal justice system requires that prosecutors retain wide discretion in shaping their case and retain discretion which evidence is presented to the Court and how that evidence is presented.  "If prosecutors were hampered in exercising their judgment as to the use of" certain facts to include or exclude in a probable cause affidavit, which they did not personally attest to, "by concern about resulting personal liability, the triers of fact in criminal cases often would be denied relevant evidence." *Id.*  Moreover, defendants are provided opportunities to challenge the veracity of statements in probable cause affidavits. Defendants may request a *Franks* hearing, as was done in this case; and if it is found that false statements were made to obtain evidence, then that evidence can be suppressed.  Therefore, the Court finds that its extension of absolute immunity to a prosecutor who allegedly drafts and files

---

[10]     Plaintiffs allege in the Second Amended Complaint, that it is "highly unusual for a chief deputy attorney general [ ] to be involved in the drafting of a search warrant." (D.I. 5 ¶ 72). A prosecutor, however, can and may well draft a search warrant application. The Court does not find this practice to be so rare or far-fetched as to not have practical consequences upon a prosecutor's work.

a probable cause affidavit containing falsities, does not unduly harm the functioning of the criminal justice system.

### c.    The Court is not persuaded by Plaintiff McGuiness's rebuttal.

In addition, the Court does not find Plaintiff McGuiness's rebuttal argument persuasive.

First, Plaintiff McGuiness argues that the Supreme Court's decision in *Buckley* precludes granting absolute immunity to Defendants Denney and Mackler because their actions occurred before Plaintiff McGuiness's arrest and indictment.  To support her assertion, Plaintiff McGuiness references a single line of dicta in *Buckley*: "[a] prosecutor neither is, nor should consider himself to be an advocate before he has probable cause to have anyone arrested."  509 U.S. 274.

Plaintiff's reliance and reading of this quote, however, does not support her assertion that all prosecutorial actions taken prior to arrest or indictment do not receive qualified immunity. Indeed, the Third Circuit has explicitly "rejected bright-line rules that would treat the timing of the prosecutor's action (*e.g.*, pre- or post-indictment), or location (*i.e.*, in- or out-of-court) as dispositive." *Odd v. Malone*, 538 F.3d 202, 210 (3d Cir. 2008).  The Third Circuit, and several of its sister circuits, have observed that the Supreme Court's absolute immunity jurisprudence is focused primarily on the function that the prosecutor was performing and not the timing of the prosecutor's action.  *See Wearry v. Foster*, 33 F.4th 260, 268 (5th Cir. 2022); *Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012); *KRL v. Moore*, 384 F.3d 1105, 1111 (9th Cir. 2004) ("[T]he timing of the prosecutor's conduct informs our determination of the function performed, but it is not determinative.").  The Court does not mean to say that the timing of the prosecutor's actions is entirely irrelevant.  Timing is relevant "to the extent [it bears] upon the nature of the function the prosecutor is performing."  *Malone*, 538 F.3d at 210.  Here, however, timing was not dispositive because of the nature of the alleged function drafting/writing an affidavit to be

presented to a judge and filing that document with the court. Such action is entirely consistent with the quasi-judicial function and role of a prosecutor.

Relatedly, the Court also finds support for the argument that Defendants Denney and Mackler possessed probable cause to have Plaintiff McGuiness arrested at the time the Probable Cause Affidavit was drafted and filed. By nature, the Probable Cause Affidavit reflects that its affiant, Defendant Robinson – and presumably, the other alleged drafters – possessed probable cause to believe that Plaintiff McGuiness was engaging in various forms of official misconduct. (*See* D.I. 5, Ex. 1 (stating, among other things, that there was probable cause that Defendant violated state bidding and campaign finance laws, misappropriated official funds, and engaged in witness/whistleblower intimidation)). As a result, if, as Plaintiff McGuiness avers, "probable cause" is a pre-requisite for "advocatory activities," then the affidavit itself establishes that its drafters possessed probable cause. This observation contradicts Plaintiff McGuiness's argument that the prosecutor's lacked probable cause at the time they co-authored, drafted, and filed the Probable Cause Affidavit.

Separately, and additionally, Plaintiff McGuiness cites to *T.F.R. v. Morris Cnty. Prosecutor's Office*, Civ. No. 2:16-5407, 2017 WL 349377 (D.N.J. Jan. 24, 2017) ("*T.F.R.*") to support her assertion that absolute immunity should be denied. The Court, however, does not find the reasoning in *T.F.R.* to be applicable here. In *T.F.R.*, the New Jersey District Court held that a prosecutor does not receive absolute immunity when "*advising* police *to pursue* a search warrant." *Id.* at *3 (emphasis added). Without agreeing or disagreeing with that conclusion, the Court observes that Plaintiff McGuiness does not allege that Defendants Denney or Mackler advised police to pursue a search warrant. Rather, Plaintiff alleges that Defendants Denney and Mackler drafted, co-wrote, and knowingly filed a false affidavit to secure a search warrant. Drafting,

writing, and filing a search warrant is, of course, different from advising police to pursue a particular course of action. As the Court in *T.F.R* observed, "professional evaluation of the evidence assembled by police when determining to pursue charges" and "presentation of evidence in support of a search warrant" are prosecutorial actions entitled to absolute immunity. *Id.* at 6. Therefore, the reasoning in *T.F.R.* does not change the Court's analysis.

All in all, the Court finds that Defendants Denney and Mackler are entitled to absolute prosecutorial immunity. As a result, Plaintiff McGuiness's Section 1983 claims cannot proceed against Defendants Denney and Mackler.

**B.**      **Count II (Slander Per Se Against Defendants) is Dismissed in its Entirety.**

Plaintiffs McGuiness, Gross and MYCG also assert a slander claim against Defendants. (D.I. 5 ¶¶ 97-119). Specifically, Plaintiffs allege that at the Press Conference, Defendants intentionally or recklessly made false statements about the payments McGuiness made to MYCG and Gross, and about the services MYCG and Gross provided. (*Id.*). Defendants argue Count II should be dismissed in its entirety because Defendants Mackler and Robinson did not make any statements at the press conference and because Defendants Jennings and Denney are entitled to absolute immunity under Delaware's State Tort Claims Act and Delaware's common law. (D.I. 14 at 18-24). The Court agrees and dismisses Count II in its entirety.

**1.**      **Plaintiffs Fail to Plausibly Allege Defendants Mackler and Robinson Committed Slander Per Se**

Defendants Mackler and Robinson seek dismissal of Count II of the Second Amended Complaint on the grounds that neither of them spoke, and thus were incapable of slander, at the Press Conference. (D.I. 14 at 13). Plaintiffs fail to respond to Defendants' argument. Notwithstanding the lack of reply, the Court agrees with Defendants and will dismiss Count II as it applies to Defendants Mackler and Robinson.

a.     <u>**Legal Standard**</u>

To successfully allege a claim for slander (oral defamation) under Delaware law, Plaintiffs must plead five elements: "(1) defamatory communication; (2) publication; (3) the communication refers to the plaintiff; (4) a third party's understanding of the communication's defamatory character; and (5) injury." *Esposito v. Townsend*, C.A. No: 12C-08-006 (RBY), 2013 WL 493321, at *7-8 (Del. Super. Ct. Feb. 8, 2013).  If the alleged slander involves "maligning a person in his or her trade or business," then proof of special damages is not required, and it is considered "slander *per se*."  *Id.*

b.     <u>**Analysis**</u>

Simply put, Plaintiffs fail to plausibly allege that Defendants Mackler and Robinson committed slander *per se*.

The allegations related to Count II focus primarily on statements that Defendants Denney and Jennings made at the Press Conference.  (*See* D.I. 5 ¶¶ 97-119; *see also* ¶¶ 42-46 (incorporated into Count II by reference)).  Unlike Defendants Jennings and Denney, Defendants Mackler and Robinson are not alleged to have "made false statements."  (*Id.* ¶ 102).  In fact, Defendant Robinson is not even alleged to have been present at the Press Conference.  (Id. ¶ 42 (alleging that Defendants Jennings, Denney, and Mackler represented the Delaware Department of Justice)).  The only allegation that implicates Defendants Mackler and Robinson is found in paragraph 62 which states: "Defendants *Robinson, Mackler*, Denney, and Jennings, possessed information contrary to the information submitted in the Probable Affidavit and original indictment and *statements they made* during the press conference."  (*Id.* ¶ 62) (emphasis added).  This allegation, however, does not "nudge [this claim] across the line from conceivable to plausible" in order to survive dismissal.  *Twombly*, 550 U.S. at 570

The Second Amended Complaint includes a hyperlinked video of the Press Conference. (D.I. 5 ¶ 42). The Court reviewed the video. *See Leboon v. Zurich Am. Ins. Co.*, 673 Fed. Appx. 173, 176 (3d Cir. 2016) ("[W]hen ruling on a defendant's motion to dismiss, the Court may consider [extraneous materials] explicitly relied upon in the complaint without converting the motion to dismiss [into] a summary judgment motion."). The video evidences that only Defendants Jennings and Denney spoke at the Press Conference. Defendant Mackler did not speak during the entirety of the video and Defendant Robinson did not appear in the video. (*See also* D.I. 14 at 19 ("Defendant Robinson was not even present at the Press Conference.")). Plaintiffs' own exhibit contradicts the allegations that Defendants Mackler or Robinson committed slander at the Press Conference; and, as a result, "the exhibits control." *Horkheimer v. Philadelphian Owners Ass'n.*, 903 F.3d 100, 112 (3d Cir. 2018).

Therefore, the Court finds that Count II fails to plausibly state a slander *per se* claim against Defendants Robinson and Mackler. Count II is dismissed as it applies to these two Defendants.

### 2.    Defendants Jennings and Mackler are Entitled to Absolute Immunity Under the Delaware State Tort Claims Act.

Defendant Jennings, the Delaware Attorney General, and Defendant Denney, a former Delaware Deputy Attorney General,[11] move to dismiss Count II on the grounds that they are entitled to absolute immunity under the Delaware State Tort Claims Act ("the DSTCA"). The DSTCA provides that "the immunity of judges, the Attorney General and Deputy Attorneys General . . . shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute." 10 *Del. C.* § 4001. Pursuant to this provision, Defendant Jennings and Denney argue that they are entitled to absolute immunity

---

[11]    At the time of the alleged conduct, Defendant Denney was serving as Deputy Attorney General. *See supra*, note 7.

because the alleged defamatory statements made at the press conference arose out of the performance of an official duty – namely, announcing indictments to the public. (D.I. 14 at 21). Plaintiffs counter that making false statements at a press conference are not part of Defendants Jennings' and Denney's official duties and, thus, they are not entitled to absolute immunity. (D.I. 17 at 19). The Court agrees with Defendants Jennings and Denney and finds that they are entitled to absolute immunity. Accordingly, Count II, as it pertains to Defendants Jennings and Denney, is dismissed.

### a.   <u>Legal Standard</u>

The DSTCA, in relevant part, provides:

> Except as otherwise provided by the Constitutions or laws of the United States or of the State of Delaware . . . no claim or cause of action shall arise . . . where the following elements are present:

> (1) The act or omission complained of arose out of and in connection with the performance of an official duty [. . .];

> (2) The act or omission complained of was done in good faith and in the belief that the public interest would best be served thereby; and

> (3) The act or omission complained of was done without gross or wanton negligence.

> provided that the immunity of judges, ***the Attorney General and Deputy Attorneys General, and members of the General Assembly shall, as to all civil claims or causes of action founded upon an act or omission arising out of the performance of an official duty, be absolute***; provided further that in any civil action or proceeding against the State or a public officer, employee or member of the State, the plaintiff shall have the burden of proving the absence of 1 or more of the elements of immunity as set forth in this section.

10 *Del. C.* § 4001 (emphasis added).

As stated above, the Attorney General and Deputy Attorneys General receive absolute immunity for "act[s] or omission[s] arising out of the performance of an official duty." *Id.*

Delaware Courts have likewise interpreted this provision in the DSTCA as conferring absolute immunity upon the Attorney General and Deputy Attorneys General. *See Reed v. Brady*, Civ. Action No. 2156-S, 2002 WL 1402238, at *6 (Del. Ch. June 21, 2002) ("[T]he [Delaware] Attorney General has absolute immunity from any civil liability for actions taken in her official capacity.); *Vick v. Haller*, 512 A.2d 249 (Del. Super. Ct. 1986) (same); *Weber v. Oberly*, 571 A.2d 788 (Del. 1989) (same). Phrased differently, the first three elements of the statute, do not apply to official duty-adjacent conduct of the Attorney General or Deputy Attorney General – instead, those officials receive absolute immunity for actions "arising out of performance of an official duty." 10 *Del. C.* § 4001. Additionally, the DSTCA requires that the plaintiff bears the burden of proving that the Attorney General or Deputy Attorney General should not receive absolute immunity. *See Doe v. Cates*, 499 A.2d 1175, 1180 (Del. 1985); *see also Chang v. Mayo*, C.A. No. N15C-10-100-EMD, 2016 WL 3640260, at *3 (Del. Super. Ct. June 28, 2016).

### b.    Analysis

The question before the Court is whether making statements at the Press Conference about Plaintiffs McGuiness, Gross and MYCG arose out of the performance of an official duty of the Delaware Attorney General or the Delaware Deputy Attorney General. In order to discern the Attorney General and Deputy Attorney General's official duties, both parties urge the Court to examine the Delaware Code.

The Delaware Code enumerates the "[p]owers, duties and authority" of the State Department of Justice and the Attorney General." 29 *Del. C.* § 2504. Among other powers, the Attorney General and a Deputy Attorney General, who is a member of the Delaware Department of Justice, possess the following duties:

> (1) To continue to exercise the powers and perform the duties by the Constitution, statutes and common law vested in and imposed upon the Attorney General prior to January 1, 1969;

(2) . . . to provide legal advice, counsel and services . . . and to publish or cause to be published such opinions in book form every 2 years;

[ . . .]

(4) To investigate matters involving the public peace, safety and justice and to subpoena witnesses and evidence in connection therewith; [. . .]

[ . . .]

(6) To have charge of all criminal proceedings as prior to January 1, 1969; [. . .]

29 *Del. C.* § 2504.

Defendants first argue that speaking to the press about indictments was a duty "vested in and imposed upon the Attorney General" at common law. 29 *Del. C.* § 2504(1). Defendants urge this Court to follow the guidance of the Pennsylvania Supreme Court, which has found that informing the public of criminal charges was a duty of the Attorney General at common law. (D.I. 14 at 23 (citing to *Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952)). The Court, however, cannot definitively say whether or not under *Delaware* common law, the Attorney General enjoyed the same power. Despite a review of legislative and judicial materials, the Court is devoid of resources evidencing the common law powers of the Delaware Attorney General.[12] And, as Plaintiffs observe, Defendants fail to cite any Delaware-specific law to elucidate our understanding. The Court's decision, therefore, is not rooted in this argument.

---

[12] The Court, however, does observe that several other courts have determined that their State Attorney Generals did enjoy the power to inform the press and public of indictments and criminal charges at under other states' common law. *See Matson v. Margiotti*, 88 A.2d 892 (Pa. 152); *Kilgore v. Younger*, 30 Cal. 3d 770 (Cal. 1982); *Hultman v. Blumenthal*, 67 Conn. App. 613 (Conn. 2002).

Nevertheless, the Court finds that announcing the indictment to the press arises out of the enumerated, official duties to "investigate matters involving the public peace, safety and justice" and to "have charge of all criminal proceedings . . .." 29 *Del. C.* § 2504.

It is undisputed that Defendants Jennings and Denney were performing an official duty when investigating and prosecuting Plaintiff McGuiness. It likewise clear that Defendants Jennings and Denney held the Press Conference to discuss their performance of that official duty. *See McGhee v. Pottawattamie County*, 514 F.3d 739 (8th Cir. 2008) ("Clearly, when [the County attorney] held his press conference and issued his written press release he was acting in his official capacity as County Attorney discussing prosecutions by the state.") (holding the Iowa Tort Claims Act barred a defamation claim against the Defendant County Attorney); *see also Nero v. Mosby*, 890 F.3d 106, 127 (4th Cir. 2018) ("[The State Attorney's] press conference statements clearly fell within the scope of her employment" because she informed the public about an ongoing investigation and instituted a prosecution.") (holding that the State Attorney was statutorily immune from a defamation claim under the Maryland State Tort Claims Act). Further Defendants Jennings and Denney appeared and spoke as the Delaware Attorney General and the Delaware Deputy Attorney General – not as private citizens in their individual capacities. Indeed, Plaintiffs, confusingly and contradictorily, concede that Defendants Jennings and Denney were representing the Department of Justice during the Press Conference. (D.I. 5 ¶ 42). Therefore, with keen focus on the preceding language "*arising out of*," the Court finds that allegedly slanderous statements at the Press Conference arose out of Attorney General Jennings' and Deputy Attorney General Denney's official duty to investigate and prosecute.

Furthermore, the Court observes that the "official duties" of the Delaware Attorney General and Deputy Attorney General have a penumbra. The implied duty of informing the public of

official actions lies squarely within the penumbra. Indeed, the Delaware Supreme Court has stated that the Delaware Attorney General possesses "broad authority to exercise numerous and varied powers," including those "the public interests from time to time require." *Seth v. State*, 592 A.2d 436, 439 (Del. 1991) (quoting *Darling Apartment Co. v. Springer*, 22 A.2d 397, 403 (Del. 1941)). Of course, the public interest requires being informed of the criminal investigations and prosecutions of the Delaware Department of Justice. Moreover, in this case, where the subject of the criminal investigation and prosecution was an elected official, the public interest in prosecutorial transparency and the alleged criminal act is heightened. The Court finds that it would be shortsighted, and against the legislative intent of the DSTCA's drafters,[13] to exclude implied, penumbral duties from receiving absolute immunity.

### c. *Buckley v. Fitzsimmons* does not Mandate a Denial of Absolute Immunity.

Plaintiffs argue that Defendants Jennings and Denney cannot receive absolute immunity per the Supreme Court's decision in *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). There, the Supreme Court determined that prosecutors received only qualified immunity for statements made to the media because such activity lacked a "functional tie to the judicial process." *Id.* at 277. Plaintiffs' argument, however, is flawed for two reasons.

First, the *Buckley* Court analyzed prosecutorial immunity under a federal statute, 18 U.S.C. § 1983. In doing so, its analysis focused on whether there was a common-law tradition in 1871, when § 1983 was enacted, of awarding a state prosecutor absolute immunity for speaking to the press. *Id.* at 268-69. In contrast, the present question before this Court is whether Defendants are

---

[13]    The Court observes that 29 *Del. C.* § 2504(2) requires the Delaware Department of Justice to "publish" or "cause to be published" certain opinions every two years. Therefore, it is clear that the legislature was interested in keeping the public informed of the Attorney General and Deputy Attorney's General work product.

entitled to prosecutorial immunity under the DSTCA.  Unlike analyzing the common law tradition in 1871, this Court must determine whether Defendants' actions "[arose] out of the performance of an official duty."  10 *Del C.* § 4001.  The Court is not constrained to the Supreme Court's "functional" or quasi-judicial approach.  *See for example, Washington v. Miami-Dade Cty.*, 19-20092-Civ-Moreno, 2019 WL 7049931, at *4 (S.D. Fla. Dec. 23, 2019) (holding that "Florida cases applying Florida law do not apply the functional approach test [from *Buckley*] to decide a prosecutor's absolute immunity.").

Second, state legislatures, unlike members of the Supreme Court, are empowered to adopt immunizing legislation which provides heightened protection to prosecutors.  *See Buckley*, 509 U.S. at 278 (the Supreme Court remarking that it did not "have a license to establish immunities from § 1983 actions in the interests of what we judge to be sound public policy.").  In fact, several states have adopted legislation immunizing prosecutors for statements made to the press regarding a pending case. *See O'Connell v. Thieneman*, 616 S.W.3d 704, 713 (Ky. Ct. App. 2020) (Maze, J., concurring) (collecting cases from Indiana, Illinois, Connecticut, Vermont, Pennsylvania, and Michigan wherein the state legislature extended statutory absolute immunity to a prosecutor's public statements about a prosecution).  The Delaware legislature has chosen to provide heightened protections to its state officials, like Defendants Jennings and Denney, through enactment of the DSTCA.  The Court will recognize and respect Delaware's sovereign prerogative to do so.  *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994) ("[W]hen a policy is embodied in a constitutional or statutory provision entitling a party to immunity from suit (a rare form of protection), there is little room for the judiciary to gainsay its 'importance.'").

Therefore, the Court does not find that *Buckley* forecloses absolute immunity in this case.

**V.**     **CONCLUSION**

For the reasons explained above, Defendant's partial motion to dismiss (D.I. 13) is granted. Count I is dismissed in part because Plaintiff McGuiness fails to properly allege a *Franks* claim as to the search of the video footage and because Defendants Denney and Mackler are entitled to absolute prosecutorial immunity.   Count II is dismissed in its entirety, with prejudice, because Plaintiffs fail to plausibly allege that Defendants Robinson and Mackler committed slander per se and because Defendants Jennings and Denney are entitled to absolute immunity under the DSTCA. An appropriate order will follow.